BEFORE THE SECOND DIVISION, MAY 26, 1941

**No. 45938.**—Protest 981764–G of Simon, Healy & Goldstein (New York).

TILSON, Judge: The plaintiffs filed this suit seeking to recover a certain sum of money alleged to have been illegally exacted as customs duties on imported merchandise. Duty was levied on the merchandise at 65 percent ad valorem under paragraph 1210 of the act of 1930, as wearing apparel in chief value of silk, not specially provided for. Plaintiffs claim the same to be properly dutiable at only 60 percent ad valorem under paragraph 1209 of the same act as woven mufflers, wholly or in chief value of silk, hemmed or hemstitched.

At the trial of this case, by agreement of counsel, the record in suit 984394–G was admitted in evidence as a part of the record herein, and upon this both sides submitted. The decision of this court in suit 984394–G was reported in Abstract 44055, wherein it was held that the merchandise was dutiable as woven mufflers, wholly or in chief value of silk, hemmed or hemstitched.

In the former case the Government attempted to establish a commercial designation differing from the common meaning of the term mufflers. The court held that in this the Government had failed. In the instant case counsel for the defendant contends that the merchandise here in question does not come within the common meaning of the term "muffler" and therefore cannot be classified as such. Counsel for the defendant further contends as follows:

It is well established in customs jurisprudence that once a common meaning of a term is judicially defined, that that meaning continues for the purpose of classification of similar merchandise.

In support of his contentions counsel for the defendant quotes the following from the case of *Vantine* v. *United States*, 4 Ct. Cust. Appls. 3, T. D. 33196.

The testimony referred to only shows some of the uses to which these so-called scarfs are put, and although the witness testified that they were sold to be used as a neck wrap for protection against the cold, we think that must be limited by his statement of the use to which he had actually seen them applied, concerning which we have already quoted his testimony, and which was that they are used to wrap not only the neck but also the shoulders, which latter use is beyond that to which we think mufflers are commonly applied.

The size and texture of these Vantine scarfs, as evidenced by the exhibit before us, also suggest that they may have uses other than those mentioned by the importer's witness, and an inspection of the sample might well be held to warrant the belief that they would be used as automobile veils by ladies.

There is no evidence before us that the merchandise in the *Vantine* case, *supra*, and the merchandise in this case is in any respect similar, except it might be conceded that in each case it was composed in chief value of silk. It is to be noted that the statements above quoted by the appellate court were based, to some extent at least, upon the use to which the merchandise in that case was put.

The evidence in this case fails to disclose that the use to which the instant merchandise is put is in any way similar to the use the appellate court found in the *Vantine* case, *supra*.

If it is the contention of counsel for the defendant that in the *Vantine* case, *supra*, the appellate court judicially defined the common meaning of the word "muffler" to be "used as a neck wrap for protection against the cold," then the evidence in this case brings the instant merchandise within that definition. Just what the judicial definition of the common meaning of the word "muffler" is, which counsel for the defendant contends the appellate court laid down in the *Vantine* case, is not entirely clear to us.

There is some indication that the conclusion reached in the *Vantine* case, *supra*, was based upon the size of the articles of merchandise in that case. In that connection it is to be noted that the articles of merchandise in that case were 45 inches by 45 inches, whereas in the instant case the articles are only 36 inches by 36 inches.

Immediately following the above quotation from the *Vantine* case, *supra*, the appellate court also observed:

But however this may be, we think the importers' evidence has not overcome the presumption that the collector's classification as silk wearing apparel was correct.

It would appear that if the evidence offered by the plaintiffs in the *Vantine* case, *supra*, was not sufficient to overcome the presumption in favor of the collector's classification, any attempt to judicially define the common meaning of the term "muffler" was unnecessary to a decision of that case, and therefore in the nature of *obiter dictum*, and of course not controlling in any future case.

It may well be that in a broad sense the merchandise in this case is "silk wearing apparel," but if so, it is that kind of silk wearing apparel which is specifically provided for as woven mufflers, composed wholly or in chief value of silk, hemmed or hemstitched, in said paragraph 1209. Therefore it is not dutiable under said paragraph 1210 as silk wearing apparel, not specially provided for.

After a careful reconsideration of the record herein, in the light of the contention made by counsel for the defendant, we find that the pronouncements made in the *Vantine* case, *supra*, are not controlling here. We therefore follow our former decision and hold all the merchandise which was assessed with duty at 65 percent under paragraph 1210 as wearing apparel in chief value of silk, not specially provided for, to be properly dutiable at only 60 percent ad valorem under paragraph 1209 of the act of 1930, as claimed by the plaintiffs.

To the extent indicated the specified claim in this suit is sustained; in all other respects and as to all other merchandise all the claims are overruled. Judgment will be rendered accordingly.